J-S44001-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: S.N.V.B., A MINOR<br><br>APPEAL OF: S.M., MOTHER | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br>No. 366 EDA 2017 |

Appeal from the Decree Entered January 6, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):
CP-51-AP-0000636-2016
CP-51-DP-0000826-2015

BEFORE: BENDER, P.J.E., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED AUGUST 29, 2017**

S.M. ("Mother") appeals from the decree entered January 6, 2017, that granted the petition filed by the Philadelphia County Department of Human Services, Children and Youth Division ("DHS") to involuntarily terminate her parental rights to her minor child, S.N.V.B. ("Child") (born in December of 2014), pursuant to sections 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act, 23 Pa.C.S. §§ 2101-2938.[1, 2] After careful review of the record and applicable law, we affirm.

--------

[1] The parental rights of Child's father, N.B. ("Father"), were terminated by a separate decree entered on the same date; however, Father is not a party to this appeal.

[2] A permanency review order was also entered on January 6, 2017, changing the permanency goal for Child to adoption. As noted by the trial court in its Pa.R.A.P. 1925(a) opinion, Mother did not challenge the change of permanency goal to adoption in her Rule 1925(b) concise statement of errors complained of on appeal; thus, she has waived that issue on appeal. Trial Court Opinion ("TCO"), 3/8/17, at 4 (citing ***Krebs v. United Refining***
*(Footnote Continued Next Page)*

The trial court provided the following factual and procedural background of this case:

The family in this case became known to DHS on March 6, 2015, when DHS received a General Protective Services ("GPS") report alleging that Mother had untreated mental health issues, appeared developmentally delayed, and had inadequate housing. The report alleged that Child, born [in] December [of] 2014, weighed 1 pound and 6 ounces at birth, and Child was presently 3 pounds and 12 ounces. Child needed to weigh 4 pounds, receive bottle feeding by mouth, and show continuous weight gain before Child could be discharged from the hospital. The report also alleged that Mother had difficulty demonstrating basic breast-feeding techniques and use of a breast pump. Mother was unemployed, had failed to apply for Women, Infants, and Children benefits ("WIC"), and resided in a home lacking utilities with Child's father. Father also appeared mentally delayed. On March 31, 2015, DHS obtained an Order for Protective Custody ("OPC") for Child, who was ready for discharge from the hospital. Child was placed in the kinship care with paternal aunt through the Community Umbrella Agency ("CUA") Jewish Children's Services. On April 2, 2015, the OPC was lifted and the temporary commitment to DHS was ordered to stand. On April 14, 2015, Child was adjudicated dependent and Child was fully committed to DHS. The case management was then transferred to CUA Wordsworth which developed a Single Case Plan ("SCP") with objectives for Mother. The initial objectives on May 1, 2015, were for Mother to maintain a positive relationship with Child; to attend supervised visits with Child twice each week; to demonstrate emotional and physical support for Child; to complete parenting classes and participate in housing and domestic abuse programs at the Achieving Reunification Center ("ARC"). Mother was also referred to NHS Human Services ("NHS") for mental health treatment.[3] Family school was later added to Mother's SCP objectives. These objectives remained

(Footnote Continued) _____

*Co.*, 893 A.2d 776, 797 (Pa. Super. 2006) (holding any issue not raised in a Rule 1925(b) statement is deemed waived)).

[3] Mother was diagnosed with bipolar disorder and schizophrenia. TCO at 3.

- 2 -

the same throughout the life of the case. At the March 23, 2016 permanency hearing, the court noted that Mother had been minimally compliant with the permanency plan. Mother never completed her SCP objectives. At all permanency reviews, the trial court found reasonable efforts on the part of DHS.

TCO at 1-2 (citations to record omitted).

On July 18, 2016, DHS filed petitions for goal change and involuntary termination of Mother's parental rights to Child. After hearing testimony from DHS at the termination hearing on January 6, 2017, the trial court issued final decrees, changing the goal to adoption and terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).

On January 18, 2017, Mother timely filed a notice of appeal, along with a timely Rule 1925(b) concise statement of errors complained of on appeal. In her brief, Mother presents the following issues for our review:

A. Whether the trial court erred in involuntarily terminating [] Mother's parental rights pursuant to [§] 2511(a)(1), [(2), (5), and (8)] where it was not supported by clear and convincing evidence when [] Mother completed a substantial portion of her [Family Service Plan ("FSP")]/SCP goals?

B. Whether the trial court erred in involuntarily terminating [] Mother's parental rights where [] Mother had visited her child and there was a bond between [] Mother and Child and the termination of parental rights would have a negative effect on the developmental, physical[,] and emotional needs of [] Child?

Mother's Brief at 5 (unnecessary capitalization omitted).

We review an appeal from the termination of parental rights under the following standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency

- 3 -

cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, … 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, 36 A.3d [567,] 572 [(Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, … 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, … 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, … 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012).

In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re S.H.*, 879 A.2d 802, 806 (Pa. Super. 2005). We have previously stated:

The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to

- 4 -

enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

***In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003) (internal quotation marks omitted).

Termination of parental rights is governed by section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interest of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511; other citations omitted).

This Court must agree with only one subsection of 2511(a), in addition to section 2511(b), in order to affirm the termination of parental rights. ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Herein, we review the decree pursuant to section 2511(a)(8) and (b), which provide as follows:

> **(a) General Rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> …

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

…

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(8) and (b).

We first address whether the trial court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(a)(8).

To terminate parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(8), the following factors must be demonstrated: (1) the child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child. Section 2511(a)(8) sets a 12-month time frame for a parent to remedy the conditions that led to the [child's] removal by the court. Once the 12-month period has been established, the court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of [the Agency] supplied over a realistic time period. Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of [Agency] services.

- 6 -

*In re K.Z.S.*, 946 A.2d 753, 758-59 (Pa. Super. 2008).

Here, Mother avers that her parental rights should not have been terminated where she had "substantially completed her Family Service Plan goals and [DHS] failed to meet its burden pursuant to 23 Pa.C.S.[] § 2511." Mother's Brief at 9. In support of her argument, Mother merely states that she visited regularly with Child, re-engaged in parenting classes, started to attend to her mental health, and was seeking housing at the time of the termination hearing. *Id.* at 11-12. However, we deem Mother's claim to be unavailing.

As to the first element of section 2511(a)(8), concerning whether the child has been removed from parental care for twelve months or more from the date of removal, the trial court explained that "Child has been in DHS custody since March 31, 2015, because Mother was unable to parent." TCO at 9. As to the second element of section 2511(a)(8), whether the conditions which led to the removal or placement of the child continue to exist, the court opined, as follows:

> Since Child's removal, Mother has not completed any of her SCP objectives and has not placed herself in a position to parent Child. Mother's SCP objectives were to find adequate housing, engage in mental health treatment, participate in supervised visits with Child twice each week, attend parenting classes, attend a domestic violence program, and attend family school. Mother does not have permanent stable housing. DHS was unable to assess whether Mother's current home was ever appropriate for reunification. Mother moves from home to

home, living with relatives or friends. Mother began mental health treatment at NHS, but stopped attending.[4] Mother claimed she did not have identification and medical cards, but Mother did not use the resources provided to her by the CUA social worker to obtain the cards. Mother only recently re-engaged with NHS to restart mental health treatment. Mother was inconsistent with her supervised visits.[5] Mother did not attend parenting classes, a domestic violence program, or family school.

*Id.* (citations to record omitted).

Finally, as to the third element of section 2511(a)(8), concerning whether termination of parental rights would best serve the needs and welfare of the child, the trial court concluded:

Termination of Mother's parental rights was in the best interest[] of Child. Child has been in care for twenty-two months and needs permanency. Child is currently placed with paternal aunt, who has cared for Child for the full twenty-two months. Paternal aunt has bonded with the Child and provides for all of Child's needs. Child calls paternal aunt "Mom." The court heard testimony that remaining with paternal aunt and adoption by paternal aunt would be in the best interests of Child.

*Id.* After careful review, we discern that the court's determinations are well supported by the record.

After we determine that the requirements of section 2511(a) are satisfied, we proceed to reviewing whether the requirements of subsection (b) are met. ***See In re Adoption of C.L.G.***, 956 A.2d 999, 1009 (Pa.

---

[4] Mother last attended NHS for mental health treatment on December 18, 2015. *Id.* at 2.

[5] Despite being offered twice-a-week supervised visits, Mother had only visited Child three times between the last court date of August 22, 2016, and the termination hearing on January 16, 2017. *Id.* at 3.

Super. 2008) (*en banc*). This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). *Id.* at 1008.

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court recently stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "intangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1992)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

Here, Mother avers that she "maintained a continuous and bonded relationship with her child … and it was not in [Child's] best interest to terminate that relationship." Mother's Brief at 13. However, the record clearly belies Mother's claim.

Based on the testimony and evidence produced at the termination hearing, the trial court concluded:

> Mother did not visit Child consistently. Mother's visits were always supervised. Child did not suffer any ill effects when Mother missed visits. At a December 2016 visit, Child cried and screamed when Mother tried to hug Child; Child reached and went to foster parent for comfort. The CUA social worker testified that Mother and Child do not have a parental bond and

> Child would not suffer permanent harm if Mother's rights were terminated. It is in Child's best interest to be adopted by paternal aunt, who has cared for Child for 22 months. The CUA social worker who supervised Mother's visits with Child testified that Child views paternal aunt as the maternal figure, not … Mother. Paternal aunt takes care of all Child's needs. Child is bonded with paternal aunt and calls her "Mom." Child is in a safe and permanent home. Consequently, the court did not abuse its discretion when it found, by clear and convincing evidence, that there was no parental bond and that termination of Mother's parental rights would not destroy an existing beneficial relationship.

TCO at 10 (citations to record omitted).

As there is competent evidence in the record that supports the trial court's credibility and weight assessments regarding Child's needs and welfare, and the absence of any bond with Mother, we conclude that the court did not abuse its discretion as to section 2511(b). *See S.P.*, 47 A.3d at 826-27. Accordingly, we affirm the decree terminating Mother's parental rights to Child.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/29/2017

- 10 -